UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
OLYMPUS SECURITIES, LLC,

                                          Plaintiff,

-against-

UNITED FIBER & DATA, LLC,

                                          Defendant.
-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/14/2016

16-CV-1931 (VEC)

<u>OPINION AND ORDER</u>

VALERIE CAPRONI, United States District Judge:

      Before the Court is defendant United Fiber & Data, LLC's ("UFD") Motion to Dismiss the Complaint. Dkt. 18. UFD contends that the Complaint should be dismissed as unripe because the breach of contract alleged by Plaintiff Olympus Securities, LLC ("Olympus") has not yet occurred.

      For the reasons that follow, UFD's motion is DENIED.

## BACKGROUND[1]

      This breach of contract case arises out of Olympus's April 2015 engagement to act as investment banker to UFD. Compl. ¶ 4. Pursuant to the parties' engagement letter (the "Engagement Letter"), Olympus would act as UFD's "exclusive" investment banker for a period of approximately 6 months, ending on October 31, 2015. *Id.* ¶¶ 21, 25. In exchange, UFD agreed to pay Olympus a monthly retainer, expenses, and a percentage of gross proceeds from any capital raised and warrants for any equity issued during the term of the Engagement Letter or during a limited "fee tail" period thereafter. *Id.* ¶¶ 24-26.

---

[1] The facts are taken from the Complaint. The Court assumes all facts alleged in the Complaint are true. *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 442 (2d Cir. 2015).

Olympus alleges that it set to work immediately, "communicat[ing], with numerous potential investors, holding many conference calls and arranging various meetings between UFD and potential investors." *Id.* ¶ 27. According to Olympus, it had obtained at least four proposed term sheets for investments in UFD, including one offer for a $40 million investment by an unnamed "Investor A," *id.* ¶ 29, when, without warning, on August 17, 2015, UFD unilaterally terminated its relationship with Olympus, *id.* ¶ 34.

The Complaint alleges that UFD terminated the Engagement Letter to avoid paying Olympus commissions on "more than $30 million in [s]ecurities" issued during the term of the Engagement Letter or during the "fee tail" periods thereafter. *Id.* ¶¶ 37-39. According to Olympus, UFD owes it "at least $2.1 million" in commissions and warrants to purchase "10% of the equity or debt securities" issued by UFD during the term of the parties' agreement.[2] *Id.* ¶¶ 1, 41. The Complaint also alleges that UFD breached the terms of the Engagement Letter by terminating the parties' arrangement prior to its agreed expiry in October 2015 and by failing to pay a monthly retainer due to Olympus in June 2015. *Id.* ¶¶ 35, 48.

UFD moved to dismiss the Complaint on May 5, 2016. Dkt. 18. UFD argues that the Complaint is unripe because UFD had not, as of the date of the motion, closed on any sale of securities that might give rise to a breach of the Engagement Letter.

## DISCUSSION

Ripeness is a jurisdictional question, properly considered under Federal Rule 12(b)(1). *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all

---

[2] The Complaint also alleges that UFD personnel told Olympus in January 2016 that UFD had raised "several million dollars" in new capital. Compl. ¶ 38; *see also* Declaration of Julia R. Livingston in Support of Opposition to Motion to Dismiss ("Livingston Declaration"), Dkt. 29 ¶ 5 (UFD personnel told Olympus it raised "between $2 and $2.5 million in debt financing . . . in or around December, 2015."). It is unclear whether the $30 million referenced in the Complaint is inclusive of this amount.

uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  The Court is not limited to the pleadings, however, and may also consider evidence, including affidavits, submitted by the parties. *See Filetech U.S.A., Inc. v. France Telecom Inc.,* 157 F.3d 922, 932 (2d Cir. 1998), *overruled on other grounds by Lotes Co. v. Hon Hai Precision Indus., Co.*, 753 F.3d 395 (2d Cir. 2014) .  Ultimately, the "plaintiff has . . . the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d. Cir. 2002).

A two part test applies to whether a claim is ripe for adjudication. *Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342, 347 (2d Cir. 2005).  The Court considers whether the issues raised by the parties are "fit for review," and weighs the potential hardship to the parties if the Court delays resolution of the dispute. *Id.* at 347.  A claim is insufficiently crystallized if it depends on "uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." *AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship,* 6 F.3d 867, 872 (2d Cir. 1993) (quoting 13A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3532.2, at 137 (2d ed. 1984)).  The second part of the analysis requires the Court to make a practical evaluation of the "risk and severity of injury to [either] party" that might be caused by delaying consideration of the merits. *Murphy*, 402 F.3d at 347.

Because New York law permits a plaintiff to recover nominal damages for breach of contract, a contract claim ripens "immediately upon the breach, even where damages remain uncertain." *Argonaut P'ship, L.P. v. Bankers Tr. Co.*, No. 96-cv-1970 (MBM), 1997 WL 45521, at *5 (S.D.N.Y. Feb. 4, 1997) (citing *LNC Invs., Inc. v. First Fidelity Bank,* No. 92-cv-7584 (MBM), 1994 WL 73648, at *5 (S.D.N.Y. March 3, 1994)).  Thus, so long as Olympus pleads a

present and already occurring *breach*, the fact that its *damages* or the extent of the breach remain uncertain is not a reason for the Court to find that Olympus's claim is unripe. *See id.*; *see also Tigrent Grp., Inc. v. Process Am., Inc.,* No. 12-cv-1314 (BMC), 2012 WL 2049526, at *3 (E.D.N.Y. June 6, 2012) (New York contract law claim ripe even when plaintiff concedes it has not yet suffered any damages (quoting *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993)).

According to UFD, Plaintiff's claim is unripe because it alleges a single sale of securities that "did not and has not occurred." Def.'s Mem. at 1-2. Put another way, UFD's argument is that the allegations in the Complaint are not "fit for review" because the Complaint does not allege any present and existing breach of the Engagement Letter. Because the single transaction alleged by Olympus as grounds for its claim may never occur, and even if it does, UFD may not refuse to pay a commission, UFD believes the claim is unripe.

UFD misapprehends the Complaint. Fairly read, and crediting the allegations of the Complaint as true, as the Court must, the Complaint alleges a number of contractual breaches as the basis for Olympus's claim. Most obviously, the Complaint alleges that UFD breached the Engagement Letter by refusing to pay Olympus the June 2015 monthly retainer. Compl. ¶ 48. The Complaint also alleges that UFD terminated the Engagement Letter, even though the Engagement Letter does not include an early termination provision. *Id.* ¶ 7. Nor does the Complaint allege a singular sale of securities. Rather, it alleges "on information and belief" that UFD "closed on more than $30 million in [s]ecurities from *one or more parties*," and it describes those sales as "financings"—plural. *Id.* ¶ 14. Even assuming that the alleged $30 million was to be raised from a single source, and that the deal never happened, the Complaint also alleges that UFD personnel informed Olympus in January 2016 that "UFD had raised 'several million' dollars" from an existing investor. *Id.* ¶ 38; *see also* Livingston Decl. ¶ 5 (UFD personnel told

4

Olympus that "UFD had already raised between $2 and $2.5 million in debt financing . . . in or around December 2015"). In sum, even assuming that UFD has not closed a $30 million financing, the Complaint alleges several other breaches of the Engagement Letter, each of which is adequate to state a present and existing breach of contract. The fact that Olympus's damages may prove to be far less than the Complaint alleges, and remain subject to change, has no effect on the ripeness analysis.

The second prong of the ripeness inquiry is satisfied as well. Postponing consideration of this case "would only delay 'recovery for the plaintiff[]if [it is] so entitled or a finding of no liability for Defendants.'" *Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, 958 F. Supp. 2d 507, 519 (S.D.N.Y. 2013) (quoting *Thomas H. Lee Equity Fund V, L.P. v. Bennett*, No. 05-cv-9608 (GEL), 2007 WL 950133, at *4 (S.D.N.Y. Mar. 28, 2007)). Accordingly, the Court finds that the Complaint states a ripe claim for relief.

## CONCLUSION

UFD's Motion to Dismiss is DENIED. The Clerk of Court is respectfully requested to close the open motion at docket entry 18.

**SO ORDERED.**

**Date: October 14, 2016**
**New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**