# EXHIBIT B

```
          UNITED STATES DISTRICT COURT

         SOUTHERN DISTRICT OF NEW YORK

     ----------------------------------x
     OLYMPUS SECURITIES, LLC,

                    Plaintiff,

              -against-                  Civil Action No.:
                                         16-cv-01931-VEC
     UNITED FIBER & DATA, LLC,

                    Defendant.
     ----------------------------------x




                    CONFIDENTIAL

                    DEPOSITION OF

                  DAVID BARRY BORIS

                  New York, New York

                  December 22, 2016

                      9:33 a.m.




     Reported by:
     JUDITH CASTORE, CLR
     Job No. 48097
```

1                    BORIS
2    of raising institutional capital from
3    exactly the type of investors that UFD
4    wanted in their transaction.
5            When I learned, through our
6    diligence and which I still believe
7    should have been disclosed up front to
8    any potential advisor, but that's
9    another story -- so when we learned in
10   diligence that Mr. Hynes had a previous
11   conviction and had served jail time for
12   financial wrongdoings, I relayed to
13   Mr. Taylor that -- in my opinion, that
14   institutional investors are going to
15   have a problem with that, since most
16   institutional investors -- or many
17   institutional investors are
18   fiduciaries; if they invest in a
19   transaction or -- or take it back.
20           Most institutional investors
21   are managing money for other clients.
22   If they make an investment and for some
23   reason that investment does not work
24   out to be successful, people look to
25   say, What went wrong?

1                          BORIS

2           And if you invest in a

3   company where one of the members of the

4   board of directors has been found

5   guilty of financial fraud, that is

6   going to be a hard thing for an

7   investor to explain to their investors

8   as to why they got involved in a

9   company that had that -- that

10  management.

11          And I explained to

12  Mr. Taylor, and I explained directly to

13  Mr. Hynes -- probably on that same

14  phone call, but I'm not sure -- that I

15  wasn't here to pass judgment on

16  Mr. Hynes.  I don't really care whether

17  he was guilty or innocent of the crime

18  he was convicted for, but that if he --

19  if UFD wanted the institutional

20  investors, in their transaction, that I

21  believed -- and it's my belief, that

22  having a person with Mr. Hynes's issues

23  on the board of directors would

24  preclude that company from passing

25  diligence by most reputable

Page 171

1                    BORIS

2     institutions.

3              So, if Mr. Hynes wanted a

4     transaction to complete that he should

5     not be a part of the management, he

6     should not be a part of the board.  We

7     were not looking to take away any

8     economics, not looking to take away his

9     equity, not looking to change his

10    day-to-day position in managing the

11    real estate at UFD, but simply to say

12    that that person should not be a

13    director of the company which Mr. Hynes

14    did not agree with and which the rest

15    of UFD, we were told, strongly did

16    agree with, to the point where we --

17    there were several next steps.

18             First, we were told that a

19    board resolution would be passed in

20    which it was clear that Mr. Hynes was

21    not the point person, and that Chad

22    Taylor was.  And, I think, our input

23    from Olympus's side was that that was

24    not good enough to accomplish the goal

25    of what they're looking for.

```
 1                        BORIS
 2    et cetera.
 3         Q    Did you indicate to UFD that
 4    you did not wish to be contacted by
 5    Mr. Hynes?
 6         A    I may have.  I don't recall
 7    that specifically, but the phone call
 8    with Mr. Hynes where I told him that --
 9    as nicely as I could, that I wasn't
10    here to pass judgment on him and I -- I
11    really don't care what he did in his
12    life -- and, you know, whatever he did,
13    he paid whatever appropriate penalty
14    that a court of law decided, not my
15    judgment -- but that it was my judgment
16    that his activity would be an
17    impediment to bringing in the type of
18    investor that his partners wanted to
19    bring in.
20              And he was, you know, very
21    abusive on that call, and I made it
22    clear that I did not appreciate that.
23         Q    In what way was he abusive on
24    that call?
25         A    He strongly disagreed,
```

1                    BORIS

2    uses -- I don't recall specifically the

3    language he uses -- but was -- was,

4    let's say was not showing his

5    appreciation for how hard Olympus and I

6    had worked, and how bringing in one of

7    the world's top investors and bringing

8    in a world-class CEO, which would have

9    resulted in creation of tens of

10   millions, or potentially, hundreds of

11   millions of dollars of value for

12   Mr. Hynes and his partners; instead,

13   Mr. Hynes was basically personally

14   attacking me on -- on that call.

15            And I said, I'm not

16   interested in dealing with that.  It's

17   not -- not what I did sign up for.

18        Q    Did you ever communicate to

19   UFD that you were no longer interested

20   in doing business with them?

21        A    No.

22        Q    You mentioned reviewing draft

23   Letters of Resignation drafted by

24   Mr. Paxton; is that right?

25        A    Mr. Paxton sent me an e-mail,

1                     BORIS

2    I believe, of a resolution, or a

3    resignation, that we were told Olympus

4    was told that Mr. Hynes was going to

5    sign, which upon the execution of a

6    term sheet with an institutional

7    investor, he would leave the board of

8    directors.

9              MR. ROSS:  Is this a good

10        time for us to take our break, or

11        would you rather take it in ten

12        minutes or so?

13              MS. PIRO:  Yes.  Ten minutes.

14              MR. ROSS:  That's totally

15        fine.

16              MS. PIRO:  Marking these

17        exhibits as Exhibit Nos. 6 and 7,

18        respectively.  Exhibit 6 is a

19        document bearing Bates

20        No. OS0001730.

21              Exhibit 7 is a document with

22        Bates stamp OS0001732.

23              (Document, Bates stamped

24        0001730 through 1731, was marked

25        Defendant's Exhibit 6, for